UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

JUAN RODRIGUEZ,

Defendant.

---

96-Cr-959 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

Defendant Juan Rodriguez moves to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1), known as the "compassionate release" statute. (ECF Nos. 174, 176.) Rodriguez is currently serving a life sentence for the 1996 murders of Antonio Valencia and Freddy Sanchez. (*See* ECF No. 16, 46.) His co-defendant, Jose Martinez, is serving a life sentence for his involvement in these crimes, as well. (ECF Nos. 16, 47.)

Section 3582(c)(1)(A) permits a court to reduce a defendant's sentence if 1) "extraordinary and compelling reasons warrant such a reduction"; 2) the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a reduction; and 3) the reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).[1] The United States Sentencing Commission recently amended section 1B1.13(b) of the United States Sentencing Guidelines, which provides guidance on what constitutes extraordinary and compelling circumstances and governs the analysis of this motion. *See* U.S.S.G. § 1B1.13(b). "The defendant bears the burden of proving he is entitled to compassionate release." *United States v. Laford*, No. 11-cr-1032, 2024 WL 3778890, at *2 (S.D.N.Y. Aug. 12, 2024) (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)). As explained below, Rodriguez's motion for compassionate release is denied because he has not shown extraordinary and compelling reasons to merit a sentence reduction and because any reduction in sentence would not be consistent with the section 3553(a) factors.

## I. RODRIGUEZ HAS NOT SHOWN EXTRAORDINARY AND COMPELLING CIRCUMSTANCES.

### A. Sections 404(b) and 603 of the First Step Act Do Not Apply.

Rodriguez contends that a sentence reduction is warranted under sections 404(b) and 603 of the First Step Act of 2018. Neither section, however, applies to Rodriguez.

---

[1] A defendant must also exhaust his administrative remedies prior to bringing a motion for compassionate release. 18 U.S.C. § 3582(c)(1)(A). Rodriguez has done so here. (*See* ECF No. 174 at 30.)

Section 404(b) provides that "a court that imposed a sentence for a covered offense may[] . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018) (internal citation omitted). A covered offense is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010" committed prior to August 3, 2010. *Id.* But sections 2 and 3 of the Fair Sentencing Act address crimes related to cocaine or simple possession of narcotics. *See* Pub. L. No. 111–220, 124 Stat. 2372, 2372 (2010). Rodriguez was convicted of one count of violent crime in aid of racketeering for murder conspiracy, two counts of violent crime in aid of racketeering for murder, one count of use of a firearm in connection with a crime of violence, and one count of interstate transportation of firearms while under indictment. (ECF No. 46 at 1-2.) Thus, Rodriguez was not convicted of any qualifying offenses.

Defendant's argument under section 603 similarly fails. Section 603(a) of the First Step Act allows certain eligible defendants to be placed on home confinement for the remainder of their sentences. To be eligible, however, a defendant must be, among other criteria, over 60 years of age and "serving a term of imprisonment that is not life imprisonment based on conviction for an offense or offenses that do not include any crime of violence." 34 U.S.C. § 60541(g)(5)(A). Rodriguez, who is 55 years old and has been convicted of violent crimes (including murder), is not eligible. Section 603(b) simply directs the Court to apply the current framework for analyzing a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), which the Court does in this Opinion.

### B.  Rodriguez Does Not Identify a Qualifying Change in the Law Under U.S.S.G. § 1B1.13(b)(6).

Rodriguez contends that extraordinary and compelling reasons exist to reduce his sentence under the "unusually long sentence" provision of section 1B1.13(b). *See* U.S.S.G. § 1B1.13(b)(6). Under that provision, when a defendant has received an "unusually long sentence and [] served at least 10 years of the term of imprisonment," a court may consider "a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) . . . where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed" when determining whether extraordinary and compelling reasons exist for compassionate release. *Id.* The court must also undertake a "full consideration of the defendant's individualized circumstances." *Id.*

Although Rodriguez is currently serving a life sentence and has served more than ten years of that sentence, he has not identified any qualifying change in law. Principally, Rodriguez relies on the U.S. Supreme Court's 2005 decision in *United States*

*v. Booker*, 543 U.S. 220 (2005), which (i) made the United States Sentencing Guidelines advisory and (ii) clarified that the maximum sentence a judge may impose must be based upon facts either admitted by the defendant or proved to a jury beyond a reasonable doubt. But as explained below, neither of these changes produces a disparity between the life sentence Rodriguez received in 1998 and the sentence he would receive today.

*First*, Rodriguez contends that because he was sentenced at a time when the Sentencing Guidelines were mandatory, the sentencing court had no choice but to sentence him to life imprisonment; if he were sentenced today, a court would have discretion to vary downwards or otherwise impose a shorter sentence. That is not so. Rodriguez was convicted of two counts of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a), a statute that carries a mandatory sentence of life imprisonment. Thus, the fact that the Guidelines are now advisory does not mean that a gross disparity would result between the sentence Rodriguez received in 1998 and the one he would receive today. To the contrary, a life sentence was statutorily mandated both in 1998 and today. *See United States v. Elwood*, No. 92-469, 2024 WL 454976, at *5 (E.D. La. Feb. 6, 2024) (denying motion for compassionate release under similar reasoning), *aff'd*, No. 24-30169, 2025 WL 66346 (5th Cir. Jan. 10, 2025); *United States v. McGruder*, No. 02-CR-0013(2), 2024 WL 3176237, at *1 (D. Minn. June 26, 2024); *United States v. Isaac*, No. 22-2758, 2024 WL 1597614, at *2 (2d Cir. Apr. 12, 2024).

*Second*, Rodriguez contends that, in light of *Booker*, Judge Miriam Cedarbaum, who sentenced Rodriguez, erred by imposing a sentence based on facts not found by the jury. His argument proceeds as follows: for convictions of violent crimes in aid of racketeering (18 U.S.C. § 1959), the Guidelines provide for a base offense level of either 12 or "the offense level applicable to the underlying crime or racketeering activity," whichever is greater. U.S.S.G. § 2E1.3(a). "[I]f the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used." *Id.*, Application Note 1.

Judge Cedarbaum concluded that first-degree murder under 18 U.S.C. § 1111 was the most analogous federal offense. (ECF No. 102 at 11-15.) Rodriguez contends that the appropriate federal offense is second—not first—degree murder. In support of this argument, Rodriguez notes that the jury was instructed on New York Penal Law § 125.25, murder in the second degree under New York law, as the underlying crime in aid of racketeering. (ECF No. 102 at 11-12; *see also* ECF No. 176 at 42.)  Under section 125.25, a person commits murder when he "intends to cause the death of another person and causes the death of that person." (ECF No. 176 at 42; *see also* N.Y. Penal Law § 125.25.) By contrast, first-degree murder as defined in 18 U.S.C. § 1111 requires

premeditation.[2] Because the jury was not instructed on premeditation, Rodriguez urges, using first-degree murder as the analogous federal offense requires finding facts beyond the jury's verdict, in violation of *Booker*. All this, Rodriguez contends, would have yielded a lower Guidelines sentence.

Rodriguez has already raised a version of this argument in a prior habeas petition filed by him. In that petition, Rodriguez specifically challenged the sentencing court's characterization of the underlying crime in aid of racketeering as first-degree murder under federal law, claiming this was inconsistent with the jury's findings as to the elements of second-degree murder under New York law. (*See* ECF No. 102 at 10-12.)

When addressing the merits of this petition in 2006, Judge Cedarbaum rejected this argument. In so doing, the Court clarified that "[t]he most analogous federal offense for these particular state law crimes, which included a jury finding that [Rodriguez and his co-defendant] were guilty of conspiring to commit murder, was first degree murder, 18 U.S.C. § 1111. That determination was a legal determination made solely for the purpose of sentencing, did not involve consideration of a fact-based element of the crime, and was properly left to the discretion of the trial judge." (ECF No. 102 at 12 (citing *Guzman v. United States*, 277 F. Supp. 2d 255, 260 (S.D.N.Y. 2003)).) "First degree murder under federal law encompasses many more situations than first degree murder under New York law. While first degree murder under New York Penal Law § 125.27 requires proof of special circumstances (e.g., killing police officers/potential witnesses or use of torture), first degree murder under federal law has no similar requirements." (*Id.*) "Under federal law, any 'willful, deliberate, malicious, and premeditated killing . . . is murder in the first degree,' and the Second Circuit has consistently held that it is appropriate to analogize second degree murder under New York state law to federal first degree murder." (*Id.* at 12-13 (citing *United States v. Minicone*, 960 F.2d 1099, 1110 (2d Cir. 1992)).)

Moreover, even assuming Rodriguez were correct, this change would not produce any disparity. Rodriguez cannot avoid the reality that he was convicted of a crime that carries—both in 1998 and today—a mandatory statutory term of life imprisonment.

---

[2] 18 U.S.C. § 1111(a) provides: "Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree. Any other murder is murder in the second degree."

Accordingly, *Booker* does not produce a gross disparity between the sentence Rodriguez received in 1998 and one he would receive today.[3]

### C. Rodriguez's Remaining Contentions Do Not Constitute Extraordinary and Compelling Circumstances.

Although Rodriguez raises a variety of other circumstances that he contends are extraordinary and compelling and that warrant his release, none do so.

Rodriguez asserts that "there remains active and serious [COVID-19] outbreaks [within] and through[out] the BOP." (ECF No. 174 at 12.) He further asserts that his post-traumatic stress disorder has been exacerbated by the pandemic and harsh conditions at FCI Ray Brook, where he is currently incarcerated, and that FCI Ray Brook lacks professionals to provide treatment.

Under the recently amended policy statement, a defendant seeking a sentence reduction due to medical circumstances must show one of the following: (1) that he or she "is suffering from a terminal illness"; (2) that he or she is suffering from "a serious physical or medication condition" or "a serious functional or cognitive impairment" or "experiencing deteriorating physical or mental health because of the aging process" and that this suffering or experience "substantially diminishes" the defendant's ability to "provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (3) that he or she "is suffering from a medical condition that requires long-term or specialized medical care," this medical care is "not being provided," and without that care "the defendant is at risk of serious deterioration in health or death"; or (4) that the defendant is housed at a correctional facility "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency" that "due to personal health risk factors and custodial status," he or she is at an "increased risk of suffering severe medical complications or death as a result of exposure" to such an outbreak or emergency, and this risk cannot be adequately mitigated in a timely manner. U.S.S.G. § 1B1.13(b)(1)(A)-(D).

Rodriguez has not made the requisite showing. "[C]ourts in this district, including this Court, have found on multiple occasions that 'the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release.'" *United States v. Radulescu*, No. 19-cr-651, 2024 WL 4200388, at *2 (S.D.N.Y. Sept. 16, 2024) (quoting *United States v. Holland*, No. 18-cr-908, 2023 WL 5702483, at *1 (S.D.N.Y. Sept. 5, 2023)); *see also United States v. Tillman*, No. 13-cr-362, 2023 WL 355624, at *4 (S.D.N.Y. Jan. 23, 2023); *United States v. Davis*, No. 12-cr-712, 2020 WL 4573029, at *1 (S.D.N.Y. Aug. 7,

---

[3] To remove any doubt, murder—in any degree—qualifies as murder for the purposes of 18 U.S.C. § 1959(a)(1). *See, e.g., Lugo v. United States*, No. 01-cr-922, 2021 WL 6883419, at *6 (E.D.N.Y. May 14, 2021).

2020). Rodriguez has presented no evidence of any comorbidities or health risk factors that subject him to an "increased risk of suffering severe medical complications or death as a result of exposure to" COVID-19. U.S.S.G. § 1B1.13(b)(1)(D). To the contrary, Rodriguez admits he is vaccinated against COVID-19 (ECF No. 174 at 15), and FCI Ray Brook has no positive cases of COVID-19 at this time. *See BOP COVID-19 Statistics*, Fed. Bureau Prisons, https://www3.fed.bop.gov/coronavirus/covid19_statistics.html (last accessed Jan. 14, 2025).

Rodriguez asserts that he developed PTSD when he was nineteen, and various stressors—including an assault and the pandemic—have exacerbated his symptoms. He contends that due to staff shortages, FCI Ray Brook lacks the necessary medical staff to treat him. While the Court does not doubt the existence of Rodriguez's illness, there is no indication in this record that Rodriguez has demonstrated that his PTSD has "diminishe[d] the ability of [Rodriguez] to provide self-care" or that he is otherwise not expected to recover. U.S.S.G. § 1B1.13(b)(1)(B); *see United States v. Feliz*, No. 16-cr-809, 2023 WL 8275897, at *6 (S.D.N.Y. Nov. 30, 2023). In fact, Rodriguez's individual needs plan suggests that he is currently receiving mental health care. (*See* ECF No. 176 at 75 (listing "CARE1-MENTAL HEALTH" under "Current Care Assignments").)

Rodriguez also contends that his rehabilitation during his incarceration constitutes an extraordinary and compelling reason warranting a reduction in his sentence. (*See* ECF No. 174 at 22-25; ECF No. 176 at 21-22.) While Rodriguez's efforts at rehabilitation through completing numerous educational programs (and recently receiving his GED), serving as a mentor to other inmates, and maintaining a relationship with his family are commendable, rehabilitation is "not, by itself, an extraordinary and compelling reason" for a sentence reduction. U.S.S.G. § 1B1.13(d); *see also* 28 U.S.C. § 994(t). "[A] productive institutional record while incarcerated is what is expected and is not a basis for a sentence reduction here." *United States v. Baptiste*, No. 15-CR-854, 2024 WL 3425818, at *2 (S.D.N.Y. July 16, 2024) (internal citation and quotation marks omitted). Moreover, Rodriguez's Recidivism Risk Assessment report reveals that he has had three incident reports in the last ten years, plus a serious incident report about twelve years ago. (ECF No. 174 at 44.) While the Court commends Rodriguez's rehabilitation efforts, it cannot find that this constitutes an extraordinary or compelling circumstance at this time.

Rodriguez raises a myriad of other factors, including his young age at the time of his offense and the current infrequency of life sentences. Rodriguez, however, was 28 at the time he committed these crimes and the life sentence he is serving is both statutorily mandated and reflects the extraordinarily serious nature of his crimes. In sum, none of the circumstances Rodriguez presents makes this case extraordinary or compelling at this time.

## II.  THE SECTION 3553(A) FACTORS DO NOT WEIGH IN FAVOR OF A SENTENCE REDUCTION.

Rodriguez's motion also fails because the factors set forth in 18 U.S.C. § 3553(a) do not weigh in favor of a sentence reduction.

The section 3553(a) factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).

Rodriguez's crimes were exceptionally serious. As set forth in earlier Opinions, Rodriguez, the leader of a narcotics trafficking organization, and Martinez, a member of that organization, killed Valencia and Sanchez, their principal cocaine suppliers, to avoid a significant cocaine debt. (ECF No. 162 at 1.) Specifically, after a failed attempt to have others commit the murders, Rodriguez and Martinez took matters into their own hands. (ECF No. 102 at 1-2.) The evidence at trial revealed that Rodriguez shot Sanchez while Martinez shot Valencia. (ECF No. 162 at 1.) When Valencia continued to move, Rodriguez shot Valencia himself, twice, in the head. (*Id.*) Rodriguez then paid Martinez $1,000 for helping carry out the murders. (*Id.*)

Rodriguez contends that his sentence is unduly harsh in light of other cases in which courts have granted compassionate release motions. However, the cases Rodriguez cites do not support that contention. (*See* ECF No. 174 at 21; ECF No. 176 at 24-25.) Those cases demonstrated extraordinary and compelling circumstances not present here, including that government supported the defendant's motion (*United States v. Perez*, No. 02-cr-7, 2021 WL 837425, at *5 (D. Conn. Mar. 4, 2021)); the defendant was 18 years old at the time of his offense (*United States v. Cruz*, No. 94-cr-112, 2021 WL 1326851, at *1 (D. Conn. Apr. 9, 2021) and *United States v. Morris*, No. 99-cr-264-17, 2022 WL 3703201, at *8-9 (D. Conn. Aug. 26, 2022)); the sentencing court described the defendant's sentence as "a tragedy" and noted it "would downwardly depart" if it could (*United States v. Ramirez*, 571 F. Supp. 3d 40, 44 (S.D.N.Y. 2021)); numerous letters were submitted to attest to defendant's maturation and rehabilitation (*United States v. Ramsey*, 538 F. Supp. 3d 407, 410, 413 (S.D.N.Y. 2021), *United States v. Rodriguez*, 492 F. Supp. 3d 306, 311-12 (S.D.N.Y. 2020), *United States v. White*, No. 96-cr-1123, 2022 WL 18276933, at *2 (S.D.N.Y. Dec. 8, 2022), and *United States v. Tellier*, No. 92-cr-869, 2023 WL 5498909, at *4 (S.D.N.Y. Aug. 25, 2023)); the defendant had a completely clean prison record over 33 years (*United States v. Underwood*, No. 88-cr-822, 2021 WL 3204834, at *3 (S.D.N.Y. Jan. 15, 2021)); and the co-defendants' sentences had already been reduced (*United States v. Cheng*, 678 F. Supp. 3d 312, 317 (E.D.N.Y. 2023)).

Ultimately, granting Rodriguez's motion at this time would neither reflect the seriousness of the offenses committed, nor promote respect for the law nor provide just punishment as required under section 3553(a).[4]

### III. CONCLUSION

Rodriguez's motion for a sentence reduction is denied because, as set forth above, he has not shown extraordinary and compelling circumstances and any sentence reduction would not be consistent with the factors set forth in 18 U.S.C. § 3553(a). The Clerk of Court is directed to mail a copy of this Order to the defendant as follows: Juan Rodriguez [19848-050], FCI Ray Brook, Federal Correctional Institution, P.O. Box 900, Ray Brook, NY 12977.

Dated:  New York, New York
        January 16, 2025

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.

---

[4] Although Rodriguez asks the Court to appoint counsel for him in connection with this motion, such a request is "'left to the discretion of the district court, which may consider the merits of the defendant's motion as a significant factor in the exercise of that discretion.'" *Peña v. United States*, No. 09-cr-341, 2024 WL 3729571, at *2 (S.D.N.Y. Aug. 8, 2024) (quoting *United States v. Chavez*, No. 02-cr-1301, 2024 WL 2846606, at *4 (S.D.N.Y. May 30, 2024)); *see United States v. Fleming*, 5 F.4th 189, 192-93 (2d Cir. 2021). The Court declines to appoint counsel on this motion.